UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JAY LOY,

                Plaintiff,

                                                                  Case Number 09-12728-BC

v.                                                      Honorable Thomas L. Ludington

B & P PROCESS EQUIPMENT &
SYSTEMS, L.L.C.,

                Defendant.
_____/

**ORDER DENYING DEFENDANT'S MOTION FOR RECONSIDERATION**

Following a bench trial of this dispute between a salesman and his former employer over an unpaid commission and bonus, the Court issued an opinion and order establishing the Court's findings of fact and conclusions of law. ECF No. 35. The Court concluded that the salesman, Plaintiff Jay Loy, was entitled to judgment on both the commission and bonus, as well as additional damages pursuant to the Michigan Sales Representative Commission Act, Mich. Comp. Laws § 600.2961 ("Act"). *See Loy v. B & P Process Equip, & Sys., L.L.C.*, No. 09-12728-BC, 2011 WL 3359578 (E.D. Mich. August 04, 2011). The former employer, Defendant B&P Process Equipment & Systems, L.L.C., now moves for reconsideration. ECF No. 38.

"Generally, and without restricting the court's discretion, the court will not grant motions for rehearing or reconsideration that merely present the same issues ruled upon by the court, either expressly or by reasonable implication." E.D. Mich. L.R. 7.1(h)(3). Rather, a motion for reconsideration will be granted only if the moving party has identified a "palpable defect by which the court and the parties" were misled and demonstrates that "correcting the defect will

result in a different disposition of the case." E.D. Mich. L.R. 7.1(h). Because Defendant's motion presents the same issues ruled upon by the Court, and because it does not demonstrate that the purported defect in the Court's opinion would result in a different disposition of the case, Defendant's motion for reconsideration will be denied.

**I.**

Defendant manufactures, installs, and services commercial mixing systems in a variety of industries. Defendant hired Plaintiff as a salesman and promoted him to an account manager on January 31, 2008. Also on January 31, 2008, Plaintiff and Defendant entered into a contract that provided for the payment of sales commissions to Plaintiff. The agreement provided that Plaintiff would receive a one percent bonus commission on all "Sales Revenue" arising from the sale of new equipment that exceeded $10 million per fiscal year. The applicable bonus commission language provided:

> **Sales Revenue** for the purposes of commission calculations is equal to invoiced revenue as reflected in the purchase contract, net of shipping charges and applicable taxes.
>
> . . .
>
> **Bonus Commission:** Once your cumulative Sales Revenue within the current fiscal year exceeds your assigned annual Sales Target, you are eligible for a Bonus Commission. The Bonus Commission is applied only to Sales Revenue dollars above you annual Sales Target and is earned in addition to the regular Acquisition Commission.

The "invoiced revenue" referenced in the sales revenue calculation (i.e., "invoiced revenue as reflected in the purchase contract") was not defined elsewhere in the contract.

On April 1, 2008, Plaintiff and Defendant's then-CEO, Ray Miller, traveled to India where they negotiated and signed a "letter of intent" with an Indian company called Vedanta for

the sale of three continuous mixers designed to be used in the aluminum smelting process. The letter of intent provided that Defendant would deliver the three machines to a Vedanta plant in India, provide various services, and provide spare parts in exchange for $5,496,860. Plaintiff was credited for making the sale and negotiating the terms of the letter of intent.

Defendant, as an internal tracking system for computing commissions, recorded new sales and projected commissions with spreadsheets. One of these spreadsheets, which was created, signed, and approved by Defendant's accounting personnel, is reprinted below:

**B&P PROCESS EQUIPMENT - SALES REVENUE & MARGIN % MODEL**

| MARGIN % RANGES | | | COMMISSION |
|---|---|---|---|
| No. | Greater Than: | Equal To: | RATE |
| 1 | 0.0% | 24.0% | 0.25% |
| 2 | 24.0% | 28.0% | 0.35% |
| 3 | 28.0% | 32.0% | 0.50% |
| 4 | 32.0% | 34.0% | 0.75% |
| 5 | 34.0% | | 1.00% |

| SALES VOLUME INCENTIVE | | | BONUS |
|---|---|---|---|
| No. | Greater Than: | Equal To: | COMMISSION |
| 1 | $ - | $ 10,000,000.00 | 0.00% |
| 2 | $ 10,000,000.00 | | 1.00% |

**SUMMARY OF COMMISSIONS EARNED**

| Sales Commissions: | $ 56,398.50 |
|---|---|
| Sales Volume Incentive: | $ 60,360.00 |
| TOTAL: | $ 116,758.50 |

NOTE: Fields shaded in grey require user input. All other fields are write-protected. To remove write-protection, select: "Protection" > "Unprotect Sheet" from the "Tools" menu.

| DATE | TRANSACTION # | SALES REVENUE | PROJECTED COST | PROJECTED MARGIN $ | PROJECTED MARGIN % | SALES COMMISSIONS Commission Rate | SALES COMMISSIONS Earnings | Cumulative Revenue | SALES VOLUME INCENTIVE Eligible Revenue | SALES VOLUME INCENTIVE Bonus Commission | SALES VOLUME INCENTIVE Earnings | TOTAL EARNINGS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Yellow River | $ 6,215,000.00 | $ 4,736,989.60 | $ 1,478,010.41 | 23.78% | 0.25% | $ 15,537.50 | $ 6,215,000.00 | $ - | 0.0% | $ - | $ 15,537.50 |
| | | $ - | | | 0.00% | 0.25% | $ - | $ 6,215,000.00 | $ - | 0.0% | $ - | $ - |
| | Shandong | $ 4,325,000.00 | $ 2,968,586.00 | $ 1,356,414.00 | 31.36% | 0.50% | $ 21,625.00 | $ 10,540,000.00 | $ 540,000.00 | 1.0% | $ 5,400.00 | $ 27,025.00 |
| | Vedanta 1 | $ 5,496,000.00 | $ 3,988,298.40 | $ 1,507,701.60 | 27.43% | 0.35% | $ 19,236.00 | $ 16,036,000.00 | $ 5,496,000.00 | 1.0% | $ 54,960.00 | $ 74,196.00 |
| | 6 | | | $ - | 0.00% | 0.25% | $ - | $ 16,036,000.00 | $ - | 0.0% | $ - | $ - |
| | 7 | | | $ - | 0.00% | 0.25% | $ - | $ 16,036,000.00 | $ - | 0.0% | $ - | $ - |
| | 8 | | | $ - | 0.00% | 0.25% | $ - | $ 16,036,000.00 | $ - | 0.0% | $ - | $ - |
| | 9 | | | $ - | 0.00% | 0.25% | $ - | $ 16,036,000.00 | $ - | 0.0% | $ - | $ - |
| | 10 | | | $ - | 0.00% | 0.25% | $ - | $ 16,036,000.00 | $ - | 0.0% | $ - | $ - |
| | 11 | | | $ - | 0.00% | 0.25% | $ - | $ 16,036,000.00 | $ - | 0.0% | $ - | $ - |
| | 12 | | | $ - | 0.00% | 0.25% | $ - | $ 16,036,000.00 | $ - | 0.0% | $ - | $ - |
| | 13 | | | $ - | 0.00% | 0.25% | $ - | $ 16,036,000.00 | $ - | 0.0% | $ - | $ - |
| | 14 | | | $ - | 0.00% | 0.25% | $ - | $ 16,036,000.00 | $ - | 0.0% | $ - | $ - |
| | 15 | | | $ - | 0.00% | 0.25% | $ - | $ 16,036,000.00 | $ - | 0.0% | $ - | $ - |
| | 16 | | | $ - | 0.00% | 0.25% | $ - | $ 16,036,000.00 | $ - | 0.0% | $ - | $ - |
| | 17 | | | $ - | 0.00% | 0.25% | $ - | $ 16,036,000.00 | $ - | 0.0% | $ - | $ - |
| | 18 | | | $ - | 0.00% | 0.25% | $ - | $ 16,036,000.00 | $ - | 0.0% | $ - | $ - |
| | 19 | | | $ - | 0.00% | 0.25% | $ - | $ 16,036,000.00 | $ - | 0.0% | $ - | $ - |
| | 20 | | | $ - | 0.00% | 0.25% | $ - | $ 16,036,000.00 | $ - | 0.0% | $ - | $ - |
| | 21 | | | $ - | 0.00% | 0.25% | $ - | $ 16,036,000.00 | $ - | 0.0% | $ - | $ - |
| | 22 | | | $ - | 0.00% | 0.25% | $ - | $ 16,036,000.00 | $ - | 0.0% | $ - | $ - |
| | 23 | | | $ - | 0.00% | 0.25% | $ - | $ 16,036,000.00 | $ - | 0.0% | $ - | $ - |
| | 24 | | | $ - | 0.00% | 0.25% | $ - | $ 16,036,000.00 | $ - | 0.0% | $ - | $ - |
| | 25 | | | $ - | 0.00% | 0.25% | $ - | $ 16,036,000.00 | $ - | 0.0% | $ - | $ - |
| | TOTAL: | $ 16,036,000.00 | $ 11,693,874.00 | $ 4,342,126.01 | 27.08% | | $ 56,398.50 | | $ 6,036,000.00 | | $ 60,360.00 | $ 116,758.50 |

*[signature]* 4-29-08

TopLine Sales Compensation Solutions - CONFIDENTIAL

Dated April 29, 2008, this spreadsheet recorded the sales revenue on the Vendanta transaction as $5,496,000. Plaintiff's sales commission on the transaction, in turn, was recorded as $19,236.

-3-

And, because Plaintiff had cumulative sales revenue in excess of $10 million at the time the sales revenue for the Vedanta transaction was recorded, his bonus commission on the transaction was recorded as $54,960.

On September 4, 2008, Vedanta returned the contract, unsigned, to Defendant. Defendant's managers immediately re-executed the contract and returned it to Vedanta, which eventually executed it in October 2008.

While this was transpiring, on September 5, 2008, Plaintiff drafted a memorandum under the name of Robert Lytkowski, Defendant's national sales manager, to Larry Slovin, Defendant's CEO, which stated: "This memo is to inform that Jeremy Loy is owed by B&P Process Equipment a sum of $162,513 for commissions earned during his employment at B&P per the B&P Sales Plan which outlines the payment of commission." Plaintiff, Lytkowski, and Clay Chargot, another manager, signed the memorandum.

On September 12, 2008 Plaintiff voluntarily resigned from Defendant. In January 2009, Plaintiff began e-mailing Slovin, asking when the commissions would be paid. Slovin responded by assuring Plaintiff that he would be paid all commissions that were due. In a January 27, 2009, e-mail, for example, Slovin wrote that he had reviewed the compensation agreement with Lytowski and that Plaintiff would be paid the commissions he was owed. Slovin emphasized to Plaintiff: "The two of us are in total agreement as to the plan rules etc and what is payable under the plan rules." Slovin followed up the same day, directly addressing the Vedanta project:

> Bob [Lytowski] will call you shortly to review the payments. I apologize but I inadvertently left out the issue with Vedanta. There is considerable questions as to the likelihood of this project progressing at each stage. Our current [letters of credit] are not collectable and we do not have [a letter of credit] for the 3rd machine. All payments to you will not include Vedanta until the Vedanta project is complete. Upon the completion of Vedanta, we will calculate your commission and bonus as per our agreement and pay for the complete project.

Notwithstanding these representations, however, Defendant did not pay Plaintiff any commission or bonus associated with the Vedanta sale. This litigation followed.

Eventually, the case proceeded to a bench trial before this Court. In its trial brief, Defendant wrote: "The only 'Sales Revenue' attributable to the Vedanta contract in 2008 was the down payment invoiced by B & P on September 29, 2008." Def.'s Tr. Br. 3, ECF No. 30. Accordingly, Defendant argued, it was not obligated to pay the bonus commission because the bonus targets were based on "invoiced revenue" and the Vedanta transaction had not been fully "invoiced" at the time Plaintiff resigned. Plaintiff disagreed, emphasizing Defendant's course of conduct before the litigation began.

Ruling in Plaintiff's favor, the Court concluded that the meaning of "invoiced revenue" was not clear on the face of the document. But the parties' intentions, as reflected by their actions, suggested that Plaintiff's interpretation was correct. Moreover, the Court concluded, even if Plaintiff was not entitled to a bonus commission based on the language of the compensation plan, by Defendant's own conduct it may well have waived any right it had to refuse to pay the bonus commission.

Defendant now asks that the Court reconsider its ruling, quoting at length from its trial brief and reiterating that "[t]he only 'Sales Revenue' attributable to the Vedanta contract in 2008 was the down payment invoiced by B & P." Def.'s Br. 2, ECF No. 38 (quoting Tr. Br. 3) (internal quotation marks omitted). Defendant then argues:

> At no point did this Court consider Defendant's actual argument that revenue is invoiced when it is invoiced. The plain meaning of the word "invoice" whether being utilized as a noun or a verb is unambiguous. Vedanta was invoiced only once in 2008 and received no invoice other than the document admitted as Defendant's Exhibit 63. Providing Mr. Loy with full credit for that invoice leaves

>him short of his 2008 sales target and requires a determination that he failed to establish entitlement to a bonus commission.

Def.'s Br. 3. For the reasons that follow, Defendant's argument is unpersuasive. Its motion to reconsider will be denied.

## II.

"Generally," as noted above, "the court will not grant motions for rehearing or reconsideration that merely present the same issues ruled upon by the court, either expressly or by reasonable implication."). E.D. Mich. LR 7.1(h)(3). Here, the motion for reconsideration literally presents the same arguments ⸺it quotes its trial brief for much of its three-page brief in support of its motion for reconsideration. *See* Def.'s Br. 1–2 (prefacing a quotation of four full paragraphs of Defendant's trial brief with "Defendant's argument with regard to the bonus commission issue was succinctly set forth at pages 2-3 of its Trial Brief").

As the Court noted in its previous order, the meaning of "invoiced revenue" is not readily apparent on the face of the contract. *See Loy v. B & P Process Equip, & Sys., L.L.C.*, No. 09-12728-BC, 2011 WL 3359578, at *6–7 (E.D. Mich. August 04, 2011). "Invoiced revenue" was not a defined term elsewhere in the contract. And read in context of the commission calculation provision — "invoiced revenue as reflected in the purchase contract" — the meaning is not obvious. It might mean the periodic invoices (colloquially, the bills) sent to the purchaser. But it may also mean the revenue "reflected in the purchase contract itself," i.e., the sale price.

Defendant, in its motion for reconsideration does not expressly offer a definition of the "invoiced revenue." Instead, Defendant reiterates its "argument that revenue is invoiced when it is invoiced." Def.'s Br. 3. "Vedanta was invoiced only once in 2008," Defendant concludes. *Id*. This interpretation, of course, does not explain why the contract referred to "invoiced revenue"

not as "invoiced revenue as reflected in the invoices periodically sent to the purchaser," but rather as "invoiced revenue as reflected in the purchase contract." Thus, as the Court explained in its previous order, Defendant's actual course of practice was quite helpful in interpreting this ambiguous provision. *See Loy.*, 2011 WL 3359578, at *6–8 (citing *Port Huron Educ. Ass'n v. Port Huron Area Sch. Dist.*, 452 Mich. 309, 323 (1996) (holding that when the language of the contract is not clear on its face, the Court must look beyond the words to determine the parties' intentions)); *see also Schroeder v. Terra Energy*, 565 NW2d 887, 895 (Mich. Ct. App. 1997). ("[G]enerally a course of performance is highly persuasive evidence of proper contract interpretation when introduced against the party so performing.").

As the Court elaborated in its previous order, the Court first considered spreadsheets like the one reproduced above, which were created, signed, and approved by Defendant's accounting personnel as an internal tracking system for computing commissions. The documents reflect the commissions being earned when Defendant's customers agreed to purchase the equipment, even though the salesmen would only be paid the commissions if and when Defendant received payment for the equipment. Second, the Court considered the memorandum signed by Plaintiff, Lytkowski (Defendant's national sales manager), and Chargot (another manager), which provided in pertinent part: "This memo is to inform that Jeremy Loy is owed by B&P Process Equipment a sum of $162,513 for commissions earned during his employment at B&P per the B&P Sales Plan which outlines the payment of commission." This memorandum was executed before this litigation arose; indeed, it was executed before Plaintiff left his employment with Defendant. And finally, the Court considered the email of Slovin, Defendant's CEO, who wrote: "Upon the completion of Vedanta, we will calculate your commission and bonus as per our

agreement and pay for the complete project." Although the plain meaning of "invoiced revenue" was not obvious, the Court concluded, the parties' actions made plain that they interpreted it to mean that Plaintiff was entitled to the Vedanta commission and bonus in 2008. Defendant has not demonstrated a palpable defect in this conclusion.

### III.

Additionally, a motion for reconsideration will be granted only if the moving party demonstrates that "correcting the defect will result in a different disposition of the case." E.D. Mich. L.R. 7.1(h). Here, the Court made alternative findings regarding Plaintiff's entitlement to a bonus commission. The Court concluded that Plaintiff's interpretation of the contract was correct. And in the alternative, the Court concluded that Defendant may well have waived any right it had to refuse to pay the bonus commission based on its conduct.

In its motion for reconsideration, Defendant addresses only the first finding. It does not address the waiver argument. Accordingly, even if the Court's order was amended as Defendant requested above, Defendant has not shown that granting the motion for reconsideration would result in a different disposition of the case.

### IV.

Accordingly, it is **ORDERED** that Defendant's motion for reconsideration (ECF No. 38) is **DENIED**.

Dated: October 28, 2011

                                        s/Thomas L. Ludington
                                        THOMAS L. LUDINGTON
                                        United States District Judge

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on October 28, 2011.

s/Tracy A. Jacobs
TRACY A. JACOBS